LAW OFFICE OF SHERI J. TANAKA
SHERI J. TANAKA, #9406
4348 Waialae Ave., #586
Honolulu, Hawaii 96816
Telephone: (808) 276-4942
Fax: (808) 748-3165

Attorney for Plaintiffs
SU SEND CHANG TRAN
VANG VAN TRAN
CHIH CHIEH CHANG

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SU SEND CHANG TRAN, VANG VAN TRAN, and CHIH CHIEH CHANG, <br><br> Plaintiff, <br><br> vs. <br><br> FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE; FOOD PLANNING WAIKIKI INC. dba ALOHA HOT POT and SWEET HOME CAFE WAIKIKI; KEVIN KINERNEY; TORU YAMAMOTO; OKUDA TSUYOSHI; JOHN DOES 1-10; and DOE ENTITIES 1-10, <br><br> Defendant. | Civil No. 18-00327 <br><br><br><br><br><br><br><br> COMPLAINT; AND DEMAND FOR JURY TRIAL |

## COMPLAINT

COMES NOW Plaintiffs SU SEND CHANG TRAN; VANG VAN TRAN; and CHIH CHIEH CHANG (collectively the "Plaintiffs"), by and through their counsel of record, Law Office of Sheri J. Tanaka, and for their Complaint against Defendants FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE; FOOD PLANNING WAIKIKI INC. dba ALOHA HOT POT and SWEET HOME CAFE WAIKIKI; KEVIN KINERNEY; TORU YAMAMOTO; and OKUDA TSUYOSHI (collectively the "Defendants"), alleges as follows:

## PARTIES

1.     Plaintiff SU SEND CHANG TRAN ("SU SEND") is a resident of the State of Hawaii.

2.     Plaintiff VANG VAN TRAN ("VANG VAN") is a resident of the State of Hawaii.

3.     Plaintiff CHIH CHIEH CHANG ("CHIH CHIEH") is a resident of the State of Hawaii.

4.     Defendant FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE ("FPS" or "SWEET HOME CAFE") is a Hawaii corporation doing business in the City and County of Honolulu, State of Hawaii.

5.     Defendant FOOD PLANNING WAIKIKI INC. dba ALOHA HOT POT and SWEET HOME CAFE WAIKIKI ("FP WAIKIKI") is the subsidiary of

FPS.

6.     Defendant KEVIN KINERNEY ("KINERNEY") is a resident of the State of Hawaii and is the President of FPS.

7.     Defendant TORU YAMAMOTO ("YAMAMOTO") is a resident of the State of Hawaii and the CEO, Vice-President, Secretary, Treasurer, and Director of FPS.

8.     Defendant OKUDA TSUYOSHI ("TSUYOSHI") is a resident of Japan, and a stockholder and owner of FPS and FP WAIKIKI.

9.     Defendants JOHN DOES 1-20, DOE ENTITIES 1-10, are sued herein under fictitious names for the reason that their true names and identifies are presently unknown to Plaintiffs, except that they are persons and/or entities who are in some manner presently unknown to Plaintiffs and engaged in the activities alleged herein; and/or persons who conducted some activity in a negligent and/or willful manner, which conduct was the legal cause of the injuries or damages to Plaintiffs and/or were in some manner related to the previously named Defendant engaged in the activities alleged herein; and Plaintiffs pray leave to insert their true names and capacities, activities, and/or responsibilities, whether individual, business or governmental when the same is ascertained.  Plaintiffs have been unable to ascertain the identifies of these DOE Defendants through an examination of all documents available to them at this time.

10.     There is such a unity of interest between FPS, FP WAIKIKI, KINERNEY, YAMAMOTO, and TSUYOSHI that the individuality or separateness of the two entities and the individuals have ceased to exist, and the facts are such that an adherence to the fiction of the separate existence of the two entities and individuals would sanction a fraud or promote injustice. Accordingly, FPS, FP WAIKIKI, KINERNEY, YAMAMOTO, and TSUYOSHI are alter egos of one another. It has been revealed that FPS, FP WAIKIKI, KINERNEY, YAMAMOTO, and TSUYOSHI do not follow corporate formalities. By way of example only, FPS and FP WAIKIKI commingle funds and other assets and fail to segregate funds of the entities, and KINERNEY and YAMAMOTO treat the assets of the corporation as their own, among other things.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), because this action is based, in part, on the FLSA.

12.     In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' pendent claims, which are brought pursuant to the statutory and common laws of the State of Hawaii, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant is located within this judicial district, and the unlawful labor practices

giving rise to Plaintiffs' claims were committed in Honolulu, Hawaii, the judicial district of this Court.

## BACKGROUND

14.    SU SEND opened Sweet Home Cafe in March 31, 2007.  Sweet Home Café specialized in hot pots.

15.    CHIH CHIEH began working at Sweet Home Cafe in September of 2008.

16.    SU SEND and CHIH CHIEH developed a new and unique hot pot menu and transformed Sweet Home Cafe into an award-winning restaurant.

17.    VANG VAN is the husband of SU SEND, and he was involved in the business operations of Sweet Home Cafe since its opening in 2007.

18.    KINERNEY approached SU SEND in 2014 about starting a Sweet Home Cafe franchise.  SU SEND told KINERNEY that she was not interested in opening a franchise but was considering selling the restaurant for health reasons.

19.    KINERNEY subsequently approached SU SEND again and stated that he had "investors" in Japan who were interested in purchasing Sweet Home Cafe. SU SEND informed KINERNEY that her asking price was $1,000,000. KINERNEY, YAMAMOTO, and TSUYOSHI countered with an offer of $700,000 that SU SEND refused.

20.    YAMAMOTO and KINERNEY agreed to pay SU SEND an

additional $60,000 in monthly installments of $2,500 plus interest from the date of closing to VANG VAN, in exchange for his assistance in ownership transition of Sweet Home Cafe, making the total purchase price for Sweet Home Cafe $760,000. The total purchase price of $760,000 was not paid in full for Sweet Home Cafe.

21.     As it turned out, YAMAMOTO and KINERNEY were acting on behalf of FPS at all times they were negotiating a price for the purchase of Sweet Home Cafe.

22.     In negotiating the contract, KINERNEY repeatedly represented and YAMAMOTO agreed that if any recipe(s) of Sweet Home Cafe are changed by a measurement (e.g., changed by a teaspoon), then it would be an entirely different recipe and could be used by SU SEND, VANG VAN, and CHIH CHIEH in any of their other ventures, notwithstanding a non-compete agreement in connection with the sale of Sweet Home Cafe.

23.     After the parties agreed to the purchase and sale of Sweet Home Cafe for $760,000, but before the deal closed, KINERNEY approached SU SEND and advised that he would sabotage and cause FPS to abort the deal unless SU SEND paid KINERNEY a "finder's fee" of $20,000 in cash only. KINERNEY also advised that he would sabotage the deal if SU SEND disclosed the $20,000 cash payment to anybody.

24.     In addition, KINERNEY and YAMAMOTO approached CHIH

CHIEH the night before the deal closed and demanded that he sign an employment

contract to continue working at Sweet Home Cafe.  English is CHIH CHIEH's

second language and he can barely read English.  CHIH CHIEH was not given the

opportunity to have the employment contract reviewed or translated by anyone

else.  KINERNEY and YAMAMOTO misrepresented to CHIH CHIEH that if he

did not sign the employment contract immediately that the entire sale would fall

through.  CHIH CHIEH executed the contract for fear that he would cause the sale

to fall through if he did not.  KINERNEY and YAMAMOTO also represented to

CHIH CHIEH that if any of the recipe(s) of Sweet Home Cafe are changed by a

measurement (e.g., changed by a teaspoon), then it would be an entirely different

recipe and could be used by CHIH CHIEH in any other venture outside of Sweet

Home Cafe.

25.     KINERNEY and YAMAMOTO failed to inform CHIH CHIEH that

the contract required him to work as an employee for "7 days per week, for not less

than 9 hours a day" without overtime pay.  The contract also had a provision for a

three-year "non-compete" clause.  CHIH CHIEH did not violate any of the

provisions of this contract.

26.     CHIH CHIEH worked 7 days per week, for not less than 9 hours a day

for FP, KINERNEY, and YAMAMOTO.  At all times relevant to this Complaint,

CHIH CHIEH was a non-exempt employee for purposes of the Fair Labor

Standards Act.

27.    Subsequent to and after the closing of the sale, VANG VAN and SU

SEND assisted KINERNEY and YAMAMOTO to make the transition as smooth

as possible.  VANG VAN introduced KINERNEY to Sweet Home Cafe's vendors,

power washed the floor, repaired machinery, assisted in purchasing supplies for the

restaurant, among other things.

28.    SU SEND, VANG VAN, and CHIH CHIEH never used, disclosed,

sold or distributed the recipes developed at Sweet Home Cafe to any third parties.

29.    All of the acts and occurrences alleged herein took place in the City

and County of Honolulu, State of Hawaii.

**COUNT ONE**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201,** *et. seq.*
**(CHIH CHIEH CHANG Against FOOD PLANNING SERVICE HAWAII**
**INC. dba SWEET HOME CAFE And OKUDA TUSYOSHI)**

30.    CHIH CHIEH incorporates by reference all of the allegations

contained in paragraphs 1-29 hereinabove.

31.    At all times relevant herein, FOOD PLANNING SERVICE HAWAII

INC. dba SWEET HOME CAFE and TSUYOSHI violated the FLSA by willfully

and systematically failing to pay CHIH CHIEH premium or over-time wages for

hours worked in excess of forty hours in one work week.

32.     At all times relevant herein, FOOD PLANNING SERVICE HAWAII

INC. dba SWEET HOME CAFE and TSUYOSHI violated the FLSA by willfully

failing to pay CHIH CHIEH the minimum hourly wage.

33.     As a proximate result of the aforementioned violations, CHIH CHIEH

has been damaged in an amount to be determined at the time of trial.

34.     The acts of FOOD PLANNING SERVICE HAWAII INC. dba

SWEET HOME CAFE and TSUYOSHI were done knowingly, willfully, with

malicious intent, and with reckless disregard of CHIH CHIEH's interest, and

CHIH CHIEH is entitled to punitive damages.

## COUNT TWO
## VIOLATION OF HAWAII WAGE AND HOUR LAWS
### Haw. Rev. Stat. §§ 387-2, 387-3, 387-6, 387-12, 388-6, 388-10, 388-11
### (CHIH CHIEH Against FOOD PLANNING SERVICE HAWAII INC. dba
### SWEET HOME CAFÉ And OKUDA TSUYOSHI)

35.     CHIH CHIEH incorporate by reference all of the allegations

contained in Paragraphs 1-29 and 31-34 hereinabove.

36.     At all times relevant herein, FOOD PLANNING SERVICE HAWAII

INC. dba SWEET HOME CAFE and TSUYOSHI violated Sections HRS §§ 387-

2, 387-3, 387-6, 387-12, 388-6, 388-10, 388-11 of the Hawaii Revised Statutes in

their employment of CHIH CHIEH.

37.     CHIH CHIEH worked seven-day weeks and at least nine hours a day

without overtime pay, violating the overtime pay requirement for more than forty

hours per week pursuant to HRS § 387-3.

38.     FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME

CAFE and TSUYOSHI did not keep a readily available posting of relevant labor

laws in a place visible to CHIH CHIEH on his way to or from his place of

employment pursuant to HRS § 387-6.

39.     FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME

CAFÉ and TSUYOSHI willfully withheld premium or overtime wages for hours

worked in excess of forty hours in one work week in violation of HRS § 388-6.

40.     At all times relevant herein, FOOD PLANNING SERVICE HAWAII

INC. dba SWEET HOME CAFE and TSUYOSHI violated HRS § 387-2 by

willfully failing to pay CHIH CHIEH the minimum hourly wage.

41.     CHIH CHIEH is entitled to recover the unpaid balance of the full

amount of the unpaid wages, a penalty of a sum equal to the amount of unpaid

wages, interest at a rate of six per cent per year from the date the wages were due,

and reasonable attorneys' fees and costs under HRS §§ 388-10 and 388-11.

42.     As a proximate result of the aforementioned violations, CHIH CHIEH

has been damaged in an amount to be determined at the time of trial.

43.     The acts of FOOD PLANNING SERVICE HAWAII INC. dba

SWEET HOME CAFE and TSUYOSHI were done knowingly, willfully, with

malicious intent, and with reckless disregard of CHIH CHIEH's interest, and

CHIH CHIEH is entitled to punitive damages.

## COUNT THREE
## UNJUST ENRICHMENT
**(CHIH CHIEH CHANG Against FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE, FOOD PLANNING WAIKIKI INC., KEVIN KINERNEY, TORU YAMAMOTO, And OKUDA TSUYOSHI)**

44.     CHIH CHIEH incorporates by reference all of the allegations contained in Paragraphs 1-29, 31-34, and 36-43 hereinabove.

45.     At all relevant times, FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE, KEVIN KINERNEY, TORU YAMAMOTO, and OKUDA TSUYOSHI were obligated to pay their employees to properly compensate them with at least minimum wages and/or overtime wages for all hours worked.

46.     CHIH CHIEH did not receive monetary compensation pursuant to Hawaii and federal labor laws.

47.     CHIH CHIEH worked for below minimum wage and for excessive hours without receiving overtime pay.

48.     CHIH CHIEH conferred a benefit on FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE, FOOD PLANNING WAIKIKI INC., KEVIN KINERNEY, TORU YAMAMOTO, and OKUDA TSUYOSHI by performing services for which he was not fully or adequately paid.

49.     FOOD PLANNING SERVICE HAWAII INC. dba SWEET

HOME CAFE, FOOD PLANNING WAIKIKI INC., KEVIN KINERNEY, TORU

YAMAMOTO, and OKUDA TSUYOSHI'S retention of the benefit conferred

upon them by CHIH CHIEH would be unjust.

**COUNT FOUR**
**BREACH OF CONTRACT**
**(CHIH CHIEH Against FOOD PLANNING SERVICE HAWAII INC. dba**
**SWEET HOME CAFE, KEVIN KINERNEY, TORU YAMAMOTO, and**
**OKUDA TSUYOSHI)**

50.     CHIH CHIEH incorporates by reference all of the allegations

contained in Paragraphs 1-29, 31-34, 36-43, and 45-49 hereinabove.

51.     CHIH CHIEH worked as an employee for FOOD PLANNING

SERVICE HAWAII INC. dba SWEET HOME CAFE, KEVIN KINERNEY,

TORU YAMAMOTO, and OKUDA TSUYOSHI for at least nine hours a day

seven days a week without overtime pay.

52.     CHIH CHIEH and FOOD PLANNING SERVICE HAWAII INC. dba

SWEET HOME CAFE had an Employment Agreement, the terms of which

required FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME

CAFE to pay CHIH CHIEH $200.00 per day plus tips as an employee, which is

attached hereto as Exhibit "1" and incorporated herein by reference.  CHIH

CHIEH worked as an employee for FOOD PLANNING SERVICE HAWAII INC.

dba SWEET HOME CAFE, KEVIN KINERNEY, TORU YAMAMOTO, and

OKUDA TSUYOSHI, but CHIH CHIEH did not receive payment per the

Employment Agreement.

53.     As a direct, proximate and foreseeable result of FOOD PLANNING

SERVICE HAWAII INC. dba SWEET HOME CAFE, KEVIN KINERNEY,

TORU YAMAMOTO, and OKUDA TSUYOSHI's breach of the Employment

Agreement, CHIH CHIEH has suffered and continues to suffer monetary damages

in an amount to be proven at trial.

**COUNT FIVE**
**BREACH OF CONTRACT**
**(VANG VAN Against FOOD PLANNING SERVICE HAWAII, INC. dba**
**SWEET HOME CAFE, KEVIN KINERNEY, and TORU YAMAMOTO)**

54.     VANG VAN incorporates by reference all of the allegations contained

in Paragraphs 1-29, 31-34, 36-43, 45-49, and 51-53 hereinabove.

55.     VANG VAN assisted FOOD PLANNING SERVICE HAWAII INC.

dba SWEET HOME CAFE, KEVIN KINERNEY, and TORU YAMAMOTO in

numerous ways with the transition of Sweet Home Cafe to their control, including,

but not limited to introducing KEVIN KINERNEY and TORU YAMAMOTO to

vendors, power washing the floors, repairing the slice machine, repairing the

refrigerator, picking-up products, picking up supplies, delivering merchandise and

showing FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME

CAFE, KEVIN KINERNEY, and TORU YAMAMOTO what to buy for the

restaurant's operation.

56.     VANG VAN and FOOD PLANNING SERVICE HAWAII INC. dba

SWEET HOME CAFE had an Independent Contractor Agreement, the terms of which required FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE to pay VANG VAN $60,000 for his assistance, which is attached hereto as Exhibit "2" and incorporated herein by reference.  VANG VAN provided all of the contemplated services to FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE, KEVIN KINERNEY, and TORU YAMAMOTO, but VANG VAN did not receive payment per the Independent Contractor Agreement.

57.　　As a direct, proximate and foreseeable result of FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE, KEVIN KINERNEY, and TORU YAMAMOTO'S breach of the Independent Contractor Agreement, VANG VAN has suffered and continues to suffer monetary damages in an amount to be proven at trial.

<strong>COUNT SIX</strong><br>
<strong>BREACH OF CONTRACT</strong><br>
<strong>(SU SEND and VANG VAN Against FOOD PLANNING SERVICE HAWAII<br>
INC. dba SWEET HOME CAFE, KEVIN KINERNEY, TORU<br>
YAMAMOTO, and OKUDA TSUYOSHI)</strong>

58.　　SU SEND and VANG VAN incorporates by reference all of the allegations contained in Paragraphs 1-29, 31-34, 36-43, 45-49, 51-53, and 55-57 hereinabove.

59.　　SU SEND and VANG VAN entered into an Asset Purchase Agreement with FOOD PLANNING SERVICE HAWAII INC. dba SWEET

HOME CAFE, the terms of which required FOOD PLANNING SERVICE

HAWAII INC. dba SWEET HOME CAFE to pay SU SEND and VANG VAN

$700,000.  SU SEND and VANG VAN did not receive the $700,000 in full from

FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE,

KEVIN KINERNEY, TORU YAMAMOTO, and/or OKUDA TSUYOSHI

pursuant the Asset Purchase Agreement, which is attached hereto as Exhibit "3"

and incorporated herein by reference.

60.     As a direct, proximate and foreseeable result of FOOD PLANNING

SERVICE HAWAII INC. dba SWEET HOME CAFE, KEVIN KINERNEY,

TORU YAMAMOTO, and OKUDA TSUYOSHI'S breach of the Asset Purchase

Agreement, SU SEND and VANG VAN has suffered and continues to suffer

monetary damages in an amount to be proven at trial.

**COUNT SEVEN**
**RESCISSION OF ASSET PURCHASE AGREEMENT BASED ON FRAUD**
**(SU SEND and VANG VAN Against FOOD PLANNING SERVICE HAWII**
**INC. dba SWEET HOME CAFE)**

61.     SU SEND and VANG VAN incorporate by reference all of the

allegations contained in Paragraphs 1-29, 31-34, 36-43, 45-49, 51-53, 55-57, and

59-60 hereinabove.

62.     KINERNEY and YAMAMOTO falsely represented to SU SEND that

any change whatsoever to the recipes, no matter how small, would be considered to

give rise to an entirely different recipe and would enable SU SEND to use the

slightly altered recipe in any of her other ventures, notwithstanding a "non-use and confidentiality" provision in the Asset Purchase Agreement.

63.     At the time KINERNEY and YAMAMOTO made the above representation to SU SEND, they knew that, contrary to their representations, defendants would subsequently take the position that SU SEND was barred from using any iteration or changed version of the recipes, or any entirely new and different recipes, anywhere in the world.

64.     KINERNEY and YAMAMOTO made the false representations regarding SU SEND's ability to use slightly altered recipes in order to induce SU SEND and VANG VAN to enter into the Asset Purchase Agreement and unwittingly give away their rights to use any version of the recipes anywhere in the world.

65.     SU SEND reasonably relied on KINERNEY and YAMAMOTO's assurances that any change whatsoever to the recipes, no matter how small, would enable SU SEND to use the slightly altered recipe in any of her other ventures, notwithstanding a "non-use and confidentiality" provision in the Asset Purchase Agreement.  As SU SEND unfortunately found out, despite using entirely new and different recipes (i.e. not just something slightly altered) in her new venture, KINERNEY and YAMAMOTO nonetheless instructed that a lawsuit be filed against SU SEND and VANG VAN.

66.     If not for the false assurances and representations made by

KINERNEY and YAMAMOTO, SU SEND, and VANG VAN would not have

executed the Asset Purchase Agreement.

67.     Because SU SEND and VANG VAN were fraudulently induced to

execute the Asset Purchase Agreement, the Asset Purchase Agreement is voidable

and subject to rescission.

68.     SU SEND and VANG VAN elect to rescind the Asset Purchase

Agreement.

## COUNT EIGHT
### RESCISSION OF ASSET PURCHASE AGREEMENT BASED ON MISTAKE
### (SU SEND Against FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE)

69.     SU SEND incorporates by reference all of the allegations contained

in Paragraphs 1-29, 31-34, 36-43, 45-49, 51-53, 55-57, 59-60, and 62-68

hereinabove.

70.     At the time SU SEND and VANG VAN signed the Asset Purchase

Agreement, it was their understanding that any change whatsoever to the recipes,

no matter how small, would be considered to give rise to an entirely different

recipe and would enable SU SEND and VANG VAN to use the slightly altered

recipe in any of her other ventures, notwithstanding a "non-use and

confidentiality" provision in the Asset Purchase Agreement.  SU SEND and

VANG VAN used entirely new and different recipes (i.e. not just slightly modified, but completely different) in a new venture and was nonetheless sued at the direction of KINERNEY and YAMAMOTO, making the representations made by KINERNEY and YAMAMOTO all the more disingenuous.

71.    SU SEND and VANG VAN's understanding regarding the continued ability to use slightly altered versions of the recipes was a basic assumption was material to the Asset Purchase Agreement, and was a basic assumption upon which they executed the Asset Purchase Agreement.

72.    The Asset Purchase Agreement did not allocate to SU SEND and VANG VAN the risk that they were mistaken concerning their continued ability to use slightly altered versions of the recipes following the sale of Sweet Home Café.

73.    FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE had reason to know of SU SEND and VANG VAN's mistake regarding the continued ability to use slightly altered versions of the recipes following the sale of Sweet Home Café, and FOOD PLANNING SERVICE HAWAII INC. dba SWEET HOME CAFE caused the mistake.

74.    The enforcement of the Asset Purchase Agreement in a manner that is different than SU SEND and VANG VAN's understanding of their continued ability to use slightly altered versions of the recipes following the sale of Sweet Home Café would be unconscionable.

75.     Because SU SEND and VANG VAN executed the Asset Purchase Agreement based on a mistake of fact, the Asset Purchase Agreement is voidable and subject to rescission.

76.     SU SEND and VANG VAN elect to rescind the Asset Purchase Agreement.

**COUNT NINE**
**RESCISSION OF EMPLOYMENT AGREEMENT BASED ON MISTAKE**
**(CHIH CHIEH Against FOOD PLANNING SERVICE HAWII, INC. dba**
**SWEET HOME CAFE)**

77.     CHIH CHIEH incorporates by reference all of the allegations contained in Paragraphs 1-29, 31-34, 36-43, 45-49, 51-53, 55-57, 59-60, 62-68, and 70-76  hereinabove.

78.     At the time CHIH CHIEH executed the Employment Agreement, it was his understanding that the Employment Agreement would not require him to work hours and receive wages in violation of the Fair Labor Standards Act or state wage and hour laws.

79.     The legality of the Employment Agreement and the manner in which defendants carried out the Employment Agreement was a basic assumption on which CHIH CHIEH executed the Employment Agreement, and he would not have executed it had he known that doing so would require him to work hours and receive wages in violation of the Fair Labor Standards Act or state wage and hour laws.

80.     The risk of illegality and the exploitation of CHIH CHIEH was not allocated to CHIH CHIEH.

81.     The continued enforcement of the Employment Contract against CHIH CHIEH, which requires him to work hours and receive wages in violation of federal and state labor laws, would be unconscionable.

82.     Because CHIH CHIEH executed the Employment Agreement based on a mistake of fact, the Employment Agreement is voidable and subject to rescission.

83.     CHIH CHIEH elects to rescind the Asset Purchase Agreement.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiffs SU SEND CHANG TRAN, VANG VAN TRAN, and CHIH CHIEH CHANG pray that this Court enter judgment on these claims in favor of Plaintiffs and against all Defendants as follows:

1.     Rescission of the Asset Purchase Agreement and restitution for all benefits conferred on Defendants by SU SEND CHANG TRAN and VANG VAN TRAN;

2.     Rescission of the Employment Agreement and restitution for all benefits conferred on Defendants by CHIH CHIEH CHANG;

3.     Restoration of monies paid to Defendants pursuant to an agreement that Plaintiff has a right to rescind;

4.     Restitution of benefits conferred upon Defendants by which

Defendants were unjustly enriched;

5.     Compensatory and special damages in an amount to be proven at trial;

6.     Attorneys' fees as permitted by statute;

7.     Costs of suit;

8.     Punitive damages; and

9.     Such other and further relief as the Court may deem just and proper.

DATED:  Honolulu, Hawaii, August 21, 2018.

LAW OFFICE OF SHERI J. TANAKA


/s/ Sheri J. Tanaka
_____
Attorney for Plaintiffs
VANG VAN TRAN
CHIH CHIEH CHANG
SU SEND CHANG TRAN

## <u>JURY DEMAND</u>

VANG VAN TRAN, CHI CHIEH CHANG, and SU SEND CHANG TRAN

assert their rights pursuant to Rule 38(b) of the Federal Rules of Civil Procedure

and demand a trial by jury on all issues in this action.

DATED:  Honolulu, Hawaii, August 21, 2018.

LAW OFFICE OF SHERI J. TANAKA


/s/ Sheri J. Tanaka
_____
Attorney for Plaintiffs
VANG VAN TRAN
CHIH CHIEH CHANG
SU SEND CHANG TRAN